This is a suit by plaintiff seeking to recover compensation for total and permanent disability under the Workmen's Compensation Law (Act No. 20 of 1914, as amended). Plaintiff alleged that on March 17, 1943, while in the employ of defendant corporation, which was engaged in a hazardous business, he suffered an injury due to an accident which has totally and permanently disabled him for manual labor, and that he is not qualified to do any other kind of work. That at the time he was earning forty-five cents per hour on a normal, eight-hour day.
Plaintiff alleged his duties required that he handle and stack short bars of iron or steel weighing from forty to seventy-five pounds, and at approximately 10:30 P.M. he lifted one of said bars preparatory to stacking same on the other side of a conveyor, and as he attempted to step across the conveyor, his foot caught or tripped thereon, causing him to fall backwards to the concrete floor, landing on his buttocks in a twisted or listing posture, severely wrenching, straining or spraining his back, and resulting in injuries which have totally and permanently disabled him.
Defendants answered the petition denying that the alleged accident occurred and denying that plaintiff was disabled from any accident, as alleged by him.
The lower Court rendered judgment for plaintiff for sixty-five per cent of his weekly wages for a period not to exceed 400 weeks, and allowed him in said judgment $100 expended for medical expenses. Defendants are now prosecuting this appeal.
The evidence in the record clearly establishes that the accident happened as alleged by plaintiff, and this fact is admitted by counsel for defendants in their brief. The remaining questions to be determined are: Was plaintiff injured in the accident and if so, were the injuries the cause of disability?
We are of the opinion that the preponderance of the testimony is to the effect that plaintiff was at the time of trial below totally disabled and had been since the date of the accident. At the time of the accident, plaintiff was forty-one years of age and weighed 265 pounds. He had been engaged in manual labor since he was old enough to work but had never been injured before and, according to his testimony, which is not contradicted, he had never suffered with pain in his back until immediately after this accident.
On September 15, 1943, plaintiff gave a written statement to defendants' claim agent in which he described the accident and gave his life's history, including where he had worked and for whom, and also gave, as well as he could, the locality of the witnesses present at the time of the accident. Plaintiff is a negro and the statement given to defendants' claim agent and his testimony as a witness in his own behalf impress us with the truthfulness of his testimony. He did not in either instance attempt to mislead defendants. With the information defendants received from plaintiff in the following statement of the date above given, they produced no witnesses to contradict him. The statement is as follows and was offered by the defendants:
"My name is Manuel Edwards, I am 41 years of age, married, no children and I live at 1523 Kenneth Avenue, Shreveport, Louisiana. I am not employed at this time. *Page 726 
"I do not remember the date, but I would say that I was employed by the J.B. Beaird Co. about March 1, 1943. I was put in the steel department and my job was to break steel and after it had been placed on a roller I was supposed to stack the steel in its proper place. On the night of March 17, 1943 at about 10:30 P.M. I was performing my regular work and was working at the time with a colored boy called Shorty. I do not know his last name. After I had broken quite a bit of steel I started back to the point where I was supposed to pile it. There is a conveyor about one foot to eighteen inches wide that leads from the point where the steel is broken to the place where it is piled. The conveyor became jammed with pieces of steel which had been broken. These pieces of steel are about one foot long and about 8 inches wide and will weigh about fifty pounds. I crossed this conveyor intending to get one of the pieces of steel which had fallen off of the conveyor. I intended to pick this piece of steel up in my arms and then step across the conveyor to stack it on the opposite side of the conveyor. I picked the piece of steel up and instead of stepping across the conveyor I stepped on it and one of the rollers rolled forward causing me to fall backwards and striking my back on the concrete floor. The piece of steel that I was carrying did not strike but I turned it loose when I was falling. I was on duty from 3 to 11 P.M. and I continued at the plant but did not do any work from the time I was hurt until quitting time. The following morning I was stiff and my back was hurting me so I stayed at home and remained in bed. When I fell I injured the back toward the center and the pain extended from both sides of the center of the back. When I fell I fell in a sitting position. A boy whose name I do not know helped me to my feet. This boy is no longer employed at the plant but he hangs around the Ideal Laundry. I came back to the plant on the night of the 19th and told a white man who was running the machine which breaks the steel that I had been hurt and he told me to wait until Mr. Barton came. Mr. Barton told me to go to the first aid department but they were closed. He then told me to fool around and try to make it if I could. I hung around the plant until 11 P.M. and helped to push a little but there was not much that I could do. I did not pick up any of the pieces of steel while I was at the plant. On the morning of March 20, 1943 I came back to the plant and went to first aid. The lady at first aid gave me a slip to go to Dr. Boyd's office after she had talked with me. I went to the doctor's office on the 20th, 1943, and he told me that I was in bad shape and that I should go home and go to bed. I went home and went to bed and stayed in bed three days and then went out to see Dr. Boyd and after this second treatment I returned to my home and went to bed. Dr. Boyd kept me under his treatment about two weeks and when the doctor did not want to treat me any further I went to Dr. Alverson who examined me. I later went to Dr. Shavnin who treated me and I saw him the last time the other day. I was born in Bossier Parish but have been in Caddo since 1905. When I went to work for the company I weighed 265 pounds but I only weigh 250 now. I have never been injured before this time. I have never collected any compensation. I have worked for the Swift Fertilizer Company; a Mr. Newcom who makes sweeping compound. I have worked for the KCS as a trucker in the freight department. I was employed by the Shreveport Packing Company; Caddo Transfer Company. I worked getting meat out of the icebox for the Shreveport Packing Company and on a truck for the Caddo Transfer Co. In all of the jobs mentioned I have never been hurt and have never collected anything from any of them. I have never been to a doctor other than for tonsil trouble when I was small. I have read this statement and it is true."
If plaintiff had suffered with pain in his back prior to the accident, it is reasonable to suppose that defendants, with full information as to where plaintiff had worked prior thereto, could and would have produced witnesses to show that he had complained of such pain. Without evidence to the contrary, we are justified in finding that plaintiff had not suffered with pain in the back before the accident. The pain he is now suffering and which disables him from performing manual labor, is caused by arthritis in the vertebrae of the spinal column, and to forever rule out pain prior to the time of the accident from arthritis, we have only to accept the testimony of defendants' witness, who was the doctor plaintiff was sent to by defendants' first aid department three days after the occurrence of the accident. This doctor testified that he x-rayed plaintiff's back and consulted with a radiologist of high standing *Page 727 
and vouched for by defendants, who later used him as a witness, and that the x-ray plate disclosed that plaintiff was not suffering with arthritis at that time and that no arthritis was present in the spinal column. This same radiologist later took the stand as a witness for defendants, but he did not contradict the testimony of his colleague. We are therefore safe, under the testimony in this record, in finding that at the time of the accident plaintiff was not suffering from arthritis in the spinal column.
There can be no doubt about the fact that as soon as the accident occurred and plaintiff was assisted to his feet by a fellow employee, he did not perform any more labor and that he did not return to work, except to report his injury. Defendants apparently recognized plaintiff was injured when they sent him to their physician for treatment and who treated him for a period of time.
Approximately four weeks later plaintiff, who was still complaining of pain in his back, was x-rayed and arthritis in the spinal column was discovered. It has continuously progressed. Although we realize some doctors are of the opinion arthritis cannot be caused by trauma, we are of the opinion the majority of the doctors think differently, and it has been long recognized by the courts of this State that arthritis can be and is caused by trauma. It is also known that arthritis can be caused by infection, such as plaintiff in this case suffered. It has likewise been held by the courts of this State so many times as to call for no citation of authorities that arthritis, which is dormant, can be activated by trauma.
A discussion of the conflicting testimony of the doctors who testified in this case can be of benefit to no one and could serve no useful purpose. Some of the medical men are of the opinion plaintiff's arthritis is of long standing and caused solely from infection, while others are of the opinion, including some of the doctors offered by defendants, that plaintiff had no arthritis prior to the time of the accident. Others are of the opinion the arthritis in plaintiff's spinal column was caused by the accident while others state it no doubt caused or activated the dormant arthritic condition then existing.
The record in this case makes it certain that plaintiff had not suffered with his back prior to the time of the accident; that his sufferings started immediately thereafter and have continued to the time of trial below and that he is totally incapacitated because of said pain from performing manual labor, the only kind he is qualified to perform. The weekly wage plaintiff was earning is admitted by defendants. Plaintiff was injured in the course and scope of his employment with defendants, who were engaged in a hazardous business.
We therefore conclude that the judgment of the lower Court awarding plaintiff compensation for total and permanent disability is correct, and it is affirmed with costs.